Case 1:23-cr-00189-JRR   Document 11   Filed 06/22/23   Page 1 of 12   ✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

5:24 pm, Jun 22 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

H₩
4/12/23



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Sean R. Delaney
Assistant United States Attorney
Sean.Delaney@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4913
MAIN: 410-209-4800
FAX: 410-962-3091

April 12, 2023

David Polashuk, Esq.
Levy, Mann, Caplan, Hermann, Schwartzberg, & Polashuk, LLP
400 Redland Ct., Suite 110
Owing Mills, MD 21117
dpolashuk@lmcplaw.com

    Re:    John H. Worthington

Dear Mr. Polashuk:

    This letter, together with the Sealed Supplement, confirms the plea agreement (hereinafter, "Agreement") which has been offered to John H. Worthington (hereinafter "the Defendant") by the U.S. Department of Justice, Tax Division and the United States Attorney's Office for the District of Maryland (hereinafter, "the Government"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **May 12, 2022**, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offenses of Conviction</u>

    1.    The Defendant agrees to plead guilty to Counts One and Two of an Information charging him with willfully failing to account for and pay over taxes, in violation of Title 26, United States Code, Section 7202, for the fourth quarter of 2016 (Count One); and willfully making and subscribing a false tax return, in violation of Title 26, United States Code, Section 7206(1), for the tax year 2016 (Count Two). The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

<u>Elements of the Offense</u>

    2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which the Government would prove if the case went to trial, are as follows:

    a.    26 U.S.C. § 7202:

        i.    The Defendant had a duty to collect, account for, and pay over a tax;

        ii.    the Defendant failed to collect, truthfully account for, or pay over the tax; and

1

      iii.    the Defendant did so willfully, with the specific intent to violate the law.

  b.    26 U.S.C. § 7206(1):

      i.    The Defendant made and subscribed a return, statement, or other document which was false as to a material matter;

      ii.    the return, statement, or other document contained a written declaration that it was made under the penalties of perjury;

      iii.    the Defendant did not believe the return, statement, or other document to be true and correct as to every material matter; and

      iv.    the Defendant falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law.

### Penalties

3.    The maximum sentences provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statutes | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 26 U.S.C. § 7202 | N/A | 5 years | 3 years | $250,000 or twice gross gain/loss | $100 |
| 2 | 26 U.S.C. § 7206(1) | N/A | 3 years | 1 years | $250,000 or twice gross gain/loss | $100 |

  a.    Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

  b.    Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

  c.    Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

2

      d.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

      e.      Collection of Debts: If the Court imposes a fine or restitution, the Government's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (i) the full amount of the fine or restitution is nonetheless due and owing immediately; (ii) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (iii) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes the Government to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by the Government.

### Waiver of Rights

4.      The Defendant understands that by entering into this Agreement he surrenders certain rights as outlined below:

      a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, the Government, and the Court all agreed.

      b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

      d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court

could instruct the jury that they could not draw any adverse inference from his decision not to testify.

   e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

 5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

 6. The Government and the Defendant understand, agree, and stipulate to the Statement of Facts set forth in Attachment A hereto which the Government would prove beyond a reasonable doubt, and to the following sentencing guidelines factors:

    a.    The base offense level is **22**, pursuant to the United States Sentencing Guidelines ("U.S.S.G.") (amendments effective November 1, 2018) §§ 2T1.1, 2T1.6 and 2T4.1 (I) (Tax Table), because the tax loss was more than $1,500,000 and not more than $3,500,000.

    b.    The Government does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. The Government agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. The Government may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, the Government, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this Agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. If the defendant obtains a 3-level reduction, the final offense level thus is **19.**

    7.    There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

    8.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

    9.    At the time of sentencing, the Government and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). The Government and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that the Government or the Defendant deem relevant to sentencing.

### Waiver of Appeal

    10.    In exchange for the concessions made by the Government and the Defendant in this Agreement, the Defendant and the Government waive their rights to appeal as follows:

    a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty are unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b. The Defendant and the Government knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum. Nothing in this agreement shall be construed to prevent the Defendant or the Government from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from the Government or any investigating agency.

### Restitution and Civil Tax Assessment

11. The Defendant agrees to pay restitution to the Internal Revenue Service ("IRS") in the total amount of $2,813,348.94, pursuant to 18 U.S.C. § 3663(a)(3).

12. The Defendant agrees that the total amount of restitution reflected in this Agreement results from the Defendant's fraudulent conduct, including relevant conduct.

13. The total amount of restitution consists of the following:

| Tax Year(s) | Total Amount of Tax Loss |
|---|---|
| 2010 | $163,403.00 |
| 2011 | $158,652.52 |
| 2012 | $182,539.57 |
| 2013 | $196,650.00 |
| 2014 | $239,765.00 |
| 2015 | $196,693.00 |
| 2016 | $303,576.58 |
| 2017 | $300,497.05 |

| | |
|---|---|
| 2018 | $290,138.64 |
| 2019 | $282,445.53 |
| 2020 | $220,833.51 |
| 2021 | $278,154.54 |
| **TOTAL:** | $2,813,348.94 |

The Defendant agrees to pay Title 26 interest on the restitution amount; interest runs from the last date prescribed for payment of the relevant tax through the date of sentencing. The Government will provide an updated interest figure at sentencing.

  14. The Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the Defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). The Defendant does not have the right to challenge the amount of this restitution-based assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the Defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

  15. The Defendant is entitled to receive credit for restitution paid pursuant to this Agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. The Defendant understands and agrees that the Agreement does not resolve the Defendant's civil tax liabilities, that the IRS may seek additional taxes, interest, and penalties from the Defendant relating to the conduct covered by this Agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise the Defendant's obligation to pay any remaining civil tax liability. The Defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

  16. The Defendant understands that he is not entitled to receive credit with the IRS for any payment until the payment is received by the IRS. If full payment cannot be made immediately, the Defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the probation office. The Defendant also agrees to provide the above-described information to the Probation Office.

  17. If the Defendant makes a payment of the restitution agreed to above prior to sentencing, the payment will be applied as a credit against the restitution ordered pursuant to paragraph 12.

18.     The Defendant agrees to send all payments made pursuant to the Court's restitution order to the Clerk of the Court at the following address:

Clerk of the Court, District of Maryland
Attn: Fourth Floor, Clerk's Office
101 W. Lombard St.
Baltimore, MD 21201

19.     With each payment to the Clerk of the Court made pursuant to the District Court's restitution order, the Defendant will provide the following information:

    a. The Defendant's name and Social Security Number;

    b. The District Court and the docket number assigned to the case;

    c. Tax year(s) or period(s) for which restitution has been ordered; and

    d. A statement that the payment is being submitted pursuant to the District Court's restitution order.

The Defendant agrees to include a request that the Clerk of Court send the information, along with the Defendant's payments, to the IRS at the address listed below:

IRS – RACS
Attn: Mail Stop 6261, Restitution
333 W. Pershing Ave.
Kansas City, MO 64108

20.     The Defendant also agrees to send a notice of any payments made pursuant to this Agreement, including the information listed in the previous paragraph, to the IRS at the following address:

IRS – RACS
Attn: Mail Stop 6261, Restitution
333 W. Pershing Ave.
Kansas City, MO 64108

<u>Further Prosecution</u>

21.     Under the terms of the Agreement and in view of the Defendant's plea to the two-count Information in violation of Title 26, United States Code, Sections 7202 and 7206(1), the Government agrees not to prosecute the Defendant further for tax offenses arising from the Defendant's individual income taxes or from employment or corporate taxes related to Harryman House Inc., for the tax years 2010 through 2021.

### Waiver of Statute of Limitations

22. The Defendant agrees to waive any claim, challenge, or defense based on the statute of limitations for the conduct covered by this Agreement, as described in the Statement of Facts (Attachment A) and elsewhere in the Agreement, for tax years 2016, 2017, 2018, 2019, 2020, and 2021.

### Defendant's Conduct Prior to Sentencing and Breach

23. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, the Government, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

24. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) the Government will be free from its obligations under this Agreement; (ii) the Government may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, the Government will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that the Government is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

25. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

26. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between the Government and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and the Government other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

_____
Sean R. Delaney
Assistant United States Attorney

_____
Jorge Almonte
Assistant Chief
Matthew L. Cofer
Trial Attorney
U.S. Department of Justice, Tax Division

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

5/9/23
Date

_____
John H. Worthington

I am John H. Worthington's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this Agreement is informed and voluntary.

5/10/2023
Date

_____
David Polashuk, Esq.

10

## ATTACHMENT A
## STATEMENT OF FACTS: JOHN H. WORTHINGTON

*The United States and the Defendant agree that if this case proceeded to trial, the United States would prove the following facts below beyond a reasonable doubt. The parties agree that these are not all of the facts that would have been proved if this case proceeded to trial.*

The Defendant, John H. Worthington, a resident of Owing Mills, Maryland, is the sole shareholder and President of Harryman House Inc. ("HH Inc."), which he incorporated in Maryland on February 10, 1995. Through HH Inc., the Defendant operates a restaurant under the trade name "The Grill at Harryman House" ("The Grill"), in Reisterstown, Maryland. In his roles as sole shareholder of HH Inc. and owner of The Grill, the Defendant hires its employees, operates its payroll, keeps its books and records, maintains signatory authority over its business bank accounts, and controls all banking transactions. The Defendant was previously a partial owner of a predecessor corporation, 340 Main Street, Inc., which operated the restaurant since at least 1985.

Since at least 2010, the Defendant has issued Forms W-2 to employees of HH Inc. and withheld federal income taxes and Federal Insurance Contribution Act ("FICA") taxes (collectively, "trust fund taxes") from their wages. However, from at least the first quarter of 2010 through the fourth quarter of 2021, the Defendant never filed Employer's Quarterly Federal Tax Returns, Forms 941, with the Internal Revenue Service ("IRS") to report the trust fund taxes he withheld from his employees' paychecks, and the employer's matching share of the FICA taxes due (collectively, "employment taxes"). Neither did the Defendant remit any employment taxes to the IRS for this same period. Specifically, from the fourth quarter of 2016 through the fourth quarter of 2021, the Defendant failed to report and pay over approximately $991,646.20 in trust fund taxes, as well as an additional $456,317.21 in the employer's share of FICA taxes. In addition, from the first quarter of 2010 through the third quarter of 2016, the Defendant failed to report and pay over $1,365,385.52 in combined employment taxes. In total, from at least 2010 through 2021, the Defendant has failed to report and pay over approximately $2,813,348.94 in employment taxes due and owing to the IRS.

The Defendant knew he had a duty to collect, truthfully account for and pay over employment taxes during this period. But instead of meeting his tax obligations, the Defendant used funds from his business to pay other creditors and for a variety of personal expenses, including mortgage payments for his personal residence, various personal vehicle expenses, college tuition and expenses for his two children, golf club membership dues, season tickets to the Baltimore Orioles, international vacations, and salaries for himself and his wife, among other expenses.

In addition to failing to report and pay over employment taxes, for tax year 2016, the Defendant filed a joint U.S. Individual Income Tax Return, Form 1040, that he knew contained a materially false statement and that he signed under the penalty of perjury. Specifically, the Defendant falsely claimed $24,207 in federal income tax withholdings from his own wages from HH Inc., despite knowing that no such withholdings were ever reported or paid over to the IRS. This falsity resulted in the Defendant receiving a refund from the IRS in the amount of $9,096.

11

Had he instead accurately reported $0 in withholdings, the Defendant would have owed the IRS approximately $15,111 in taxes for tax year 2016.

The Defendant also failed to file timely Forms 1040 for the tax years 2017 through 2021, despite filing for extensions of time to file returns, and having received wages and other compensation from HH Inc. in amounts greater than the minimum filing amount established by law for each of the tax years. Furthermore, the Defendant failed to timely file any U.S. Corporation Income Tax Returns, Form 1120, on behalf of HH Inc. during the time period of at least 2016 to 2021, despite the corporation being active in each of these years and having generated gross receipts or sales of more than $15,000,000 during this period.

The Defendant committed all of these acts while knowing that he had a duty to timely file complete and accurate tax returns for his corporation and for himself as an individual, while knowing that he had a duty to report and pay over employment taxes on behalf of HH Inc., and while knowing that he had a duty to pay the taxes due and owing on income he earned in all of the years at issue. Further, he committed these acts in order to evade payment on the full amount of taxes he and his corporation owed each year, and in fact, ultimately evaded payment on an amount of tax due and owing to the United States of at least approximately $2,813,348.94.

The Defendant undertook all these actions willfully, within the District of Maryland and elsewhere.

\*\*\*

I have read this statement of facts and have carefully reviewed it with my attorney. I acknowledge that it is true and correct. I further acknowledge this statement of facts does not set forth each and every fact that the Government could prove at trial, nor does it encompass all of the acts which I committed in furtherance of the offenses to which I plead guilty.

5/09/23
Date

_John H. Worthington_

5/10/2023
Date

_David Polashuk, Esq._